# EXHIBIT C



Record & return to:
**MCLEOD & DOWLING**
ATTORNEYS AT LAW
336 Georgia Ave Ste 105
North Augusta SC 29841

BEAUFORT COUNTY SC - ROD
BK 02967 PGS 2066-2075
FILE NUM 2010032604
06/24/2010   04:45:43 PM
REC'D BY N DOE RCPT# 620473
RECORDING FEES 16.00

After Recording Return To:
Genworth Financial Home Equity Access, Inc.
10951 White Rock Road, Suite 200
Rancho Cordova, CA 95670

Prepared By:
Genworth Financial Home Equity Access, Inc.
10951 White Rock Road, Suite 200
Rancho Cordova, CA 95670

Space Above This Line For Recording Data

State of South Carolina
Parcel Number: APN : R511 008 000 0025 0000

FHA Case Number: 461-4974342/951-255
Loan Number: ▮

# FIXED RATE
# HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on **June 14, 2010** ("Date"). The mortgagor is Annie Mae Bolden whose address is 609 WILLIAM HILTON PARKWAY, HILTON HEAD ISLAND, SC 29928-3501 ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, and all renewals, extensions and modifications of the Second Note, up to a maximum principal amount of **THREE HUNDRED FIFTY TWO THOUSAND FIVE HUNDRED AND NO/100** Dollars (U.S. $352,500.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on **February 01, 2080**. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in BEAUFORT County, South Carolina:

Legal description attached hereto as Exhibit A and by this reference made a part hereof.

which has the address of: 609 WILLIAM HILTON PARKWAY, HILTON HEAD ISLAND, SC 29928-3501 ("Property Address").



Mortgage Cadence, Inc. © - 0292 (07/07)          (1 of 9)          South Carolina Second Mortgage - HECM FIXED RATE

Book2967/Page2066

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

   In the event of foreclosure of this Security Instrument or other transfer of title to the Property that


Mortgage Cadence, Inc. © - 0292 (07/07)    (2 of 9)    South Carolina Second Mortgage - HECM FIXED RATE

extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

   Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

   If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

   To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in


Mortgage Cadence, Inc. © - 0292 (07/07)    (3 of 9)


South Carolina Second Mortgage - HECM FIXED RATE

place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

9. **Grounds for Acceleration of Debt.**

    (a) **Due and Payable.** Lender may require payment-in-full of all sums secured by this Security Instrument if:

    (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property); or

    (iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

    (iv) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (v) An obligation of the Borrower under this Security Instrument is not performed.

    (b) **Notice to Lender.** Borrower shall notify the Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

    (c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

    (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii) Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed-in-lieu of foreclosure.



Mortgage Cadence, Inc. © - 0202 (07/07)     (4 of 9)     South Carolina Second Mortgage - HECM FIXED RATE

Book2967/Page2069

(d) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

    (a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

    (b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

    (c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures


Mortgage Cadence, Inc. © - 0292 (07/07)    (5 of 9)


South Carolina Second Mortgage - HECM FIXED RATE

from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to First Security Instrument.**

    (a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

    (b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

        (i) The First Security Instrument is assigned to the Secretary; or

        (ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

    If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

    (c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

        (i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

        (ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

    (d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

    (e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.


Mortgage Cadence, Inc. © - 0292 (07/07)

(6 of 9)


South Carolina Second Mortgage - HECM FIXED RATE

15. **Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not a assignment for additional security only.

    If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

    Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

    Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be


Mortgage Cadence, Inc. © - 0292 (07/07)    (7 of 9)


South Carolina Second Mortgage - HECM FIXED RATE

entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

21. **Lien Priority.** The full amount secured by this Security Instrument shall have lien priority subordinate only to the full amount secured by the First Security Instrument.

22. This section is intentionally left blank.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Homestead Waiver.** Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law.

25. **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in § 12-37-250 of the South Carolina Code of Laws.

26. **Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

27. **Deferred Interest.** Interest will be charged on unpaid principal (including Capitalized Interest) until the full amount of principal, including Capitalized Interest, has been paid. Interest will accrue daily and be added to the principal balance as a Loan Advance at the end of each month. Such interest, when added to the principal balance, is "Capitalized Interest".

28. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider        [ ] Planned Unit Development Rider
[ ] Shared Appreciation Rider  [ ] Other [Specify]



Mortgage Cadence, Inc. © - 0292 (07/07)    (8 of 9)    South Carolina Second Mortgage - HECM FIXED RATE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____  06/14/10       _____  6,14,2010
Witness  Archie W. Ackerman   Date    Witness  Dorothy B Pyne       Date

_____(Seal)
Borrower- Annie Mae Bolden

---

Space Below This Line for Acknowledgement

State of South Carolina

County of  Beaufort

The foregoing instrument was acknowledged before me this (Date)  06 / 14 / 2016

by  Annie Mae Bolden

_____                _____  6,14,2010
(Signature of person taking acknowledgment)    Witness  Dorothy B Pyne
Archie W. Ackerman
Notary Public for S. C.
(Title or Rank)
                    My Commission Expires
                    August 12, 2013

(Serial Number, if any)

Embossed Hereon Is My
State of South Carolina Notary Public Seal
My Commission Expires August 12, 2013
ARCHIE W. ACKERMAN

Mortgage Cadence, Inc. © - 0292 (07/07)         (9 of 9)         South Carolina Second Mortgage - HECM FIXED RATE

## EXHIBIT "A"

ALL that certain piece, parcel or lot of land, with any improvements thereon, situate, lying and being in the State of South Carolina, County of Beaufort, and being known and designated as LOT NO. 1, containing 0.51 ACRE, more or less, located on Hilton Head Island, and being more particularly shown on a plat entitled "Lots 1 & 2, U. S. Highway 278 & Burkes Beach Road", as recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Plat Book 59, at Page 61, to which plat reference is hereby made for the purpose of providing a more complete and accurate description as to the metes, bounds, courses, distances and location of said property.

This conveyance is made subject to all recorded rights-of-way, easements, conditions, restrictions and zoning ordinances, or other land use regulations pertaining to the property herein conveyed, and in addition is subject to any of the foregoing which may appear from an inspection of the premises.

This being the same property conveyed unto ANNIE MAE BOLDEN by virtue of that Title to Real Estate Deed from HEIRS OF ABRAHAM FORD, NAMELY: ANNA FURGERSON, CLARENCE FORD, ROSA LEE JONES, ANNIE MAE BOLDEN, LOU ETHEL ALLEN, CORNELIA COHEN and DAISY FURGERSON, dated 02/27/1965 and recorded on 03/29/1965 in the ROD Office for Beaufort County, South Carolina in Book 128, at Page 237.

TMS:              R511-008-000-0025-0000

Property Address:   609 William Hilton Parkway, Hilton Head Island, SC 29928