## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:16-cv-2961-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| QUENTIN R. BOLDEN, as Personal | ) | |
| Representative of the ESTATE OF ANNA | ) | |
| MAE BOLDEN, and REVERSE MORTGAGE | ) | |
| SOLUTIONS, INC., d/b/a VERTICAL LEND | ) | |
| ISAOA/ATIMA, | ) | |
| | ) | |
| Defendant, | ) | |

The following matters are before the court on plaintiff Auto-Owners Insurance Company's ("AO") motion for interpleader, constructive trust, and to be dismissed, ECF No. 10, AO's motion to dismiss defendant Quentin R. Bolden, as personal representative of the Estate of Anna Mae Bolden's (the "Estate") counterclaims, ECF No. 16, and defendant Reverse Mortgage Solutions, Inc. d/b/a Vertical Lend ISAOA/ATIMA's ("RMS") motion to dismiss for lack of subject-matter jurisdiction, ECF No. 20. For the following reasons, the court grants in part and denies in part these motions.

## I. BACKGROUND

The instant action arises out of a dispute as to the proper payee of proceeds owed by AO pursuant to a certain homeowners insurance policy bearing the number 44-180-363-00 (the "Policy"). ECF No. 1, Compl. ¶ 5. The Policy was issued to Anna Mae Bolden ("Bolden") for a period beginning on February 3, 2015 and ending on February 2, 2016. Id. The Policy provided dwelling coverage of up to $342,000 for Bolden's home at 609 William Hilton Parkway, Hilton Head Island, South Carolina (the "insured

property"). Id.; ECF No. 12, Estate's Answer ¶ 26. The Policy lists RMS as a mortgagee of the insured property, and provides that any loss covered by the Policy "shall be payable to the mortgagee, as their interest may appear, under all present or future mortgages upon the property described in the [d]eclarations of this policy in which the mortgagee may have an interest." ECF No. 16-1, Policy 3, 39.[1]

On July 22, 2015, RMS instituted a foreclosure action against Bolden in state court (the "Foreclosure Action").[2] Compl. ¶ 8. On November 27, 2015, while the Foreclosure Action was pending, Bolden was killed in a fire that destroyed the insured property. Id. ¶ 6. Both RMS and the Estate made claims for the insurance proceeds due under the Policy. Id.

While these competing claims were pending, the Foreclosure Action moved forward, and on April 28, 2016, the state court entered a Judgment of Foreclosure and Sale, Deficiency Judgment Waived (the "Foreclosure Judgment"), ordering that the insured property be sold at a foreclosure sale. ECF No. 24-5, Foreclosure Judgment 5–8. AO attempted to resolve the insurance payment dispute in July 2016 by first issuing "an advance payment" of a portion of the dwelling coverage limits to the Estate in the amount of $100,000 on July 15, 2016, and later issuing a check payable to both the Estate and RMS for the balance of the dwelling coverage limits—$242,000—on July 29, 2016. Compl. ¶ 10, 12. The foreclosure sale occurred on August 1, 2016, at which time the insured property was sold to RMS. Id. ¶ 11. On August 2, 2016, the Estate voided AO's

---

[1] Citations to the Policy refer to the page number of the exhibit, not the page numbers listed in the Policy itself.
[2] The Foreclosure Action is listed on the South Carolina Court of Common Pleas for the Fourteenth Circuit's docket as Reverse Mortgage Solutions, Inc. v. Annie Mae Bolden, et al, Civil Action No. 2015-CP-07-01784.

check for the $242,000 balance, demanding that payment of the Policy proceeds be made solely to the Estate.  Id. ¶12.  On August 24, 2016, following recording of the foreclosure deed, RMS demanded payment of the same Policy proceeds.  Id. ¶ 13.

AO believes that RMS may have an interest in the proceeds, even following the foreclosure, and filed the instant action for interpleader on August 29, 2016 in an effort to avoid multiple liability from the Estate and RMS's (together, the "defendants") competing claims.  Id. ¶¶ 14–16.  AO wishes to pay the policy limits to the court and be released from any liability in connection with the defendants' competing claims.  Id. ¶ 16. The Estate answered on September 30, 2016, bringing counterclaims against AO for breach of contract and bad faith, and various crossclaims against RMS.  ECF No. 12, Estate's Answer ¶¶ 85–121.

On September 29, 2016, AO filed a motion to pay the remaining Policy balance of $242,000 to the court pursuant to Federal Rule of Civil Procedure 22, to place the $100,000 previously paid to the Estate into a constructive trust, and to be dismissed from further participation in this action.  ECF No. 10.  The Estate filed a response on October 13, 2016, ECF No. 18, and AO filed a reply on October 18, 2016.  ECF No. 19.  AO filed a motion to dismiss the Estate's counterclaims on October 12, 2016.  ECF No. 16.  The Estate filed a response to the motion to dismiss on October 28, 2016, ECF No. 23, and AO filed a reply on November 11, 2016.  ECF No. 24.  RMS filed its own motion to dismiss the Estate's crossclaims for lack of jurisdiction on October 24, 2016.  ECF No. 20.  The Estate filed a response to RMS's motion of November 10, 2016, ECF No. 25, and RMS filed a reply on November 21, 2016, ECF No. 26.  The court held a hearing on February 2, 2017, ECF No. 30, and allowed AO and the Estate to pay their respective

portions of the disputed funds into the court on April 10, 2017, ECF No. 31. The court took all other issues in this matter under advisement. Id. The matters are now ripe for the court's review.

## II.  STANDARDS

### A.  Interpleader

Interpleader under Federal Rule of Civil Procedure 22[3] is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund. See Chase Manhattan Bank v. Mandalay Shores Coop. Housing Ass'n, (In re Mandalay Shores Coop. Housing Ass'n ), 21 F.3d 380, 383 (11th Cir. 1994); White v. FDIC, 19 F.3d 249, 251 (5th Cir. 1994); Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc., 40 F. App'x. 767, 769, 2002 WL 1473417 at *1 (4th Cir. July 10, 2002). Interpleader is an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund. Sec. Ins. Co. of Hartford, 40 F. App'x. at 769, 2002 WL 1473417 at *1 (citing 4 James Wm. Moore et al., Moore's Fed. Practice § 22.02[1] (3d ed. 2001)). "The propriety of interpleader depends on whether the stakeholder 'legitimately fears' multiple litigation over a single fund." Metro. Life Ins. Co. v. Vines, 2011 WL 2133340, at *2 (D. Md. May 25, 2011); ReliaStar Life Ins. Co. v. Lormand, 2011 WL 900113, at *3 (E.D. Va. Mar. 11, 2011).

---

[3] Rule 22(a)(1) provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."

**B.      Motion to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  A complaint must contain sufficient factual allegations in addition to legal conclusions.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

## III.  DISCUSSION

### A.      AO's Motion for Interpleader and Motion to Dismiss

The parties do not dispute that the fire triggered coverage under the Policy and that the Policy limits will be exhausted when the proceeds are paid out.   Compl. ¶ 7. However, the Estate and RMS have both claimed entitlement to the proceeds.  Thus, AO argues, interpleader is appropriate here because it has reason to fear multiple litigations over the defendants' rights to the proceeds.  ECF No. 10 at 3.  The Estate has no objection to AO interpleading the funds, and as noted above, the court has already allowed AO to do so.  However, the Estate does object to AO's request to be dismissed from this action, arguing that its counterclaims against AO for breach of contract and bad faith seek damages in excess of the Policy proceeds.  ECF No. 18.  Because the Estate's opposition to AO's motion for interpleader is tied to the viability of its counterclaims, it is appropriate to turn to AO's motion to dismiss those counterclaims.

The Estate alleges that, following the loss of the insured property, it "properly demanded that AO pay the dwelling policy limits of $342,000."  ECF No. 12, Estate's Answer ¶ 28.  Despite the Estate's "repeated demands," AO refused to deliver the Policy proceeds to the Estate.  Id. ¶ 31.  The Estate alleges that AO's refusal was accompanied by "baseless excuses, request[s] [for] totally irrelevant documents, and [] even [the] institut[ion of] this lawsuit."  Id.  The Estate further alleges that the Foreclosure Judgment in the Foreclosure Action—and the subsequent sale of the insured property at the August 1, 2016 foreclosure sale—were directly and proximately caused by AO's failure to deliver the Policy proceeds, id. ¶¶ 32, 33, and brings counterclaims for breach of contract

claim and bad faith, id. ¶¶ 37–47. The Estate also claims that it is entitled to attorney's fees pursuant to S.C. Code § 38-59-40. Id. ¶¶ 48–52.

### 1. Breach of Contract Claim

AO argues that the Estate's breach of contract claim must fail because AO never breached the Policy, but instead, attempted to comply with the Policy by determining the proper recipient of the proceeds. ECF No. 16 at 5–6. AO points to the Policy language allowing the mortgagee to receive proceeds "as their interest may appear[] under all present or future mortgages upon the property," Policy at 39, and highlights the Court of Appeals of South Carolina's decision in Jones v. Equicredit Corp. of S.C., 556 S.E.2d 713 (S.C. Ct. App. 2001), to argue that it was reasonable to question which party's claim to the proceeds was valid.[4] In Jones, the court indicated that a mortgagee who waives a deficiency judgment in a foreclosure action may still retain a right to "insurance proceeds resulting from damage to the property prior to [a foreclosure] sale." 556 S.E.2d at 718.

The Estate does not address whether AO's confusion as to the proper payee was reasonable, or even attempt to explain why it—rather than RMS—was entitled to the proceeds. Instead, the Estate simply argues that AO's duty to pay was triggered by the fire and AO has yet to pay the full limits of the policy.[5] ECF No. 23 at 15. Concededly,

---

[4] The court would note that the fact that AO attempted to comply with the Policy does not mean that it succeeded. Thus, AO's suggestion that good faith is a defense to a breach of contract claim—as opposed to a bad faith claim—seems misplaced. As explained in greater detail below, the reason the Estate's breach of contract claim fails has much more to do with the nature of an interpleader action than it does with AO's good intentions.

[5] The Estate never specifically addresses AO's claim that it never breached the Policy. The argument cited above appears in a section of the Estate's brief entitled "Auto-Owners Has No 'Objectively Reasonable Basis' for Failing to Pay the Limits of the Policy until after the Foreclosure Sale." ECF No. 23 at 15.

this argument has some intuitive appeal—the Policy certainly required AO to pay the proceeds to <u>someone</u>, and thus, it would seem that AO has at least breached that obligation by failing to pay one of the two defendants.

However, in the context of an interpleader action, courts have disallowed counterclaims that essentially echo the competing claims to the interpleaded funds.[6] <u>Commerce Funding Corp. v. S. Fin. Bank</u>, 80 F. Supp. 2d 582, 585 (E.D. Va. 1999); <u>see also</u> <u>Nat'l Life Ins. Co. v. Alembik-Eisner</u>, 582 F. Supp. 2d 1362, 1370 (N.D. Ga. 2008) (denying defendants motion for summary judgment on state law counterclaims that "relat[ed] directly to the reason for the interpleader action," and dismissing plaintiff from the action). In <u>Commerce Funding Corp.</u>, for example, the court dismissed a defendant's counterclaims for breach of contract based on the interpleading plaintiff's failure to pay funds allegedly owed to the defendant, where the defendant's entitlement to those funds was the very basis for the interpleader action. 80 F. Supp. 2d at 586 (granting summary judgment on interpleader defendant's counterclaim for breach of contract where interpleader defendant "simply argu[ed] that it and not [the other defendant] [was] due the fund"). This situation is analogous to the facts in this case. The Estate's breach of

---

[6] Plaintiff notes that this approach has yet to be recognized under South Carolina law. ECF No. 16 at 8. However, the court fails to see how this issue would be governed by state law. While the court must certainly assess the nature of the state law claims, it is federal law that provides the mechanism of interpleader, and therefore, federal law that governs whether the counterclaims are available in an interpleader action. <u>See</u> <u>Prudential Ins. Co. of Am. v. Hovis</u>, 553 F.3d 258, 264–65 (3d Cir. 2009) (looking to purpose of federal interpleader doctrine to interpleader plaintiff could not be held liable for counterclaims that were not "truly independent of . . . the issue the interpleader action was brought to settle"); <u>Commerce Funding Corp.</u>, 80 F. Supp. 2d at 585 (looking to purpose of federal interpleader doctrine to hold that "[w]ere the defendants in an interpleader action permitted to carry forward with counterclaims against the stakeholder based on the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated").

contract claim simply alleges that AO "breached the [Policy] by failing to properly and timely pay benefits due thereunder." Estate's Answer ¶ 38. Like the breach of contract claim in Commerce Funding Corp., this allegation "begs the question" of whether the Estate was truly entitled to such funds, which is the entire reason AO brought the interpleader action in the first place. 80 F. Supp. 2d at 585. Thus, the breach of contract claim should be dismissed.

### 2. Bad Faith Claim

Turning to the Estate's bad faith claim, AO relies on Kleckley v. Nw. Nat. Cas. Co., 498 S.E.2d 669 (S.C. Ct. App. 1998), aff'd, 526 S.E.2d 218 (S.C. 2000), and Carter v. Am. Mut. Fire Ins. Co., 307 S.E.2d 227 (S.C. 1983) to argue that the Estate lacks standing to bring a bad faith claim because it is a third party to the Policy. ECF No. 16 at 6–7. However, neither case provides strong support for AO's position.

In Kleckley, the plaintiff sustained injuries from a fall at premises owned by the underlying tortfeasor. 498 S.E.2d at 670. The court held that the plaintiff—as the victim of a tort—lacked standing to bring a bad faith claim against a tortfeasor's insurer. Id. at 674. Here, the Estate does not stand in the position of a tort victim, who would only benefit indirectly from the payment of proceeds to the insured tortfeasor; instead, the Estate claims a direct interest in the proceeds—namely, Bolden's, the named insured in the AO policy.

The Carter decision provides even less support. The plaintiff in Carter lived in a home with her husband. 307 S.E.2d at 227. However, her only legal interest in the home was an inchoate dower interest. Id. She was not listed as an insured on the policy insuring the home. Id. After the home was damaged, the Carter plaintiff and her

9

husband filed separate actions against the home's insurer for bad faith refusal to pay the policy proceeds. <u>Id.</u> The <u>Carter</u> court held that the plaintiff could not maintain a bad faith claim against the insurer because any interest she may have had in the property was "contingent." 307 S.E.2d at 227 (holding that a bad faith refusal to pay first party benefits claim "does not extend to a person who is not a party to or a named insured under the insurance contract and who possesses a mere contingent interest, such as an inchoate dower interest, in the property insured"). AO argues that the Estate's interest in the proceeds is "contingent," within the meaning of the <u>Carter</u> decision, because it depends on whether the Estate or RMS is the proper recipient of the proceeds. ECF No. 16 at 7. This is surely incorrect. The <u>Carter</u> decision was based on the nature of the plaintiff's interest in the property and the policy, not the fact that the plaintiff's entitlement to the proceeds was disputed. Under AO's reasoning, an insurer would be immunized from bad faith liability whenever there was a dispute over the proper payee of insurance proceeds. Clearly, the "contingency" created by a dispute over the interpleaded funds is not the sort of contingency contemplated in <u>Carter</u>. Therefore, the Estate's bad faith claim does not fail for lack of standing.

Moreover, to the extent the Estate's bad faith claim goes to the handling of the insurance claim, the court finds that it has been adequately pleaded. South Carolina courts have explained that "[i]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." <u>Jordan v. Allstate Ins. Co.</u>, No. 4:14-cv-03007, 2016 WL 4367080, at *4 (D.S.C. Aug. 16, 2016) (quoting <u>Nichols v. State Farm Mut. Auto. Ins. Co.</u>, 306 S.E.2d 616, 619 (S.C. 1983)). The Estate

has alleged that it made repeated demands to AO to pay the policy limits.  Estate's Answer ¶ 31.  Importantly, if AO had timely issued a check to both RMS and Bolden before the foreclosure sale, this whole controversy would not have occurred.  ECF No. 23 at 16 ("Had Auto Owners timely issued a check to both RMS and Bolden as requested, the mortgage would have been paid in full and the damages now claimed would have been avoided.") (emphasis in original).  AO's justification for its delay is that it was uncertain of how to interpret the policy.  However, the facts reveal that AO ultimately took action to address that uncertainty by issuing a check payable to both the Estate and RMS.  Based on the allegations in the Estate's complaint, the court believes it is plausible that if this action had been taken sooner, the Estate's damages—and thus, this entire action—could have been avoided.  The question, then, is whether AO's delay was reasonable.  The court finds this question cannot be resolved at the motion to dismiss stage.

Therefore, the court denies AO's motion to dismiss the Estate's bad faith claim.

**B.  RMS's Motion to Dismiss**

RMS moves to dismiss all of the Estate's crossclaims, arguing that the court lacks subject matter jurisdiction, the claims are barred by res judicata, and the claims fail as a matter of law.  ECF No. 20.  The Estate's alleges that RMS has continued pursue the Policy proceeds, despite the foreclosure sale of the insured property and RMS's waiver of any deficiency judgment, and has brought crossclaims for:  (1) improper claim to dwelling loss proceeds, (2) equitable claims and remedies, (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), (4) breach of contract, (5) breach of fiduciary duty and implied covenant of good faith and fair dealing, and (6) aiding and abetting.   Estate's Answer ¶¶ 75–121.

### 1.    Subject Matter Jurisdiction

RMS first argues that the court lacks subject matter jurisdiction over the Estate's crossclaims because such claims do not relate to the disposition of the Policy proceeds. ECF No. 20 at 5–6.  The court's "subject matter jurisdiction over crossclaims is governed by Federal Rule of Civil Procedure 13(g), which states, in pertinent part, '[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action.'"  Banner Life Ins. Co. v. Bonney, 2011 WL 6002609, at *3 (E.D. Va. Nov. 29, 2011); see also Sage Title Groups, LLC v. Kersey, 2016 WL 3762979, at *3 (E.D. Pa. July 11, 2016) (looking to Rule 13(g) to determine subject matter jurisdiction over crossclaims).[7]

RMS contends that the true "subject matter" of this interpleader action is the disposition of the Policy proceeds, and that the Estate's crossclaims do not relate to this issue because they involve allegations relating to the validity of the Foreclosure Action. ECF No. 20 at 5–6.  The court disagrees.  When the crossclaim allegations are read in the light most favorable to the Estate, it is apparent that the Estate contends that the Foreclosure Action divested RMS of any interest in the Policy proceeds, and therefore, RMS's efforts to procure those proceeds are unfounded and in breach of various duties. See Estate's Answer ¶¶ 83 (alleging that the Estate is "improperly trying to collect twice . . . , interfering with contractual relations between [AO] and the Estate [] and otherwise not acting in good faith and contrary to law").  These allegations clearly arise out of the

---

[7] Crossclaims must also carry either "an independent basis for subject matter jurisdiction or must fall under the [c]ourt's supplemental jurisdiction."  Banner Life Ins., 2011 WL 6002609, at *3.  This requirement does not present any issues in this case, as the Estate's crossclaims, read in the light most favorable to the Estate, satisfy the requirements of diversity jurisdiction under 18 U.S.C. § 1332.

same "transaction or occurrence" at the heart of this interpleader action—namely, the parties dispute over the proper payee of the Policy proceeds.

Therefore, the court finds that it has subject matter jurisdiction over the Estate's crossclaims.

## 2.    Res Judicata

RMS next argues that the Estate's crossclaims are barred by res judicata because they were compulsory counterclaims in the Foreclosure Action.  ECF No. 20 at 7–9. Under South Carolina law, "[r]es judicata encompasses both issue preclusion and claim preclusion."  Catawba Indian Nation v. State, 756 S.E.2d 900, 906 (S.C. 2014).  "Issue preclusion only bars relitigation of particular issues actually litigated and decided in the prior suit."  Crestwood Golf Club, Inc. v. Potter, 328 S.C. 201, 216, 493 S.E.2d 826, 835 (S.C. 1997) (quoting Pedrina v. Chun, 906 F. Supp. 1377, 1399 (D. Hawai'i 1995)). "Claim preclusion . . . bars plaintiffs from pursuing successive suits where the claim was litigated or could have been litigated."  Id. (quoting Pedrina, 906 F. Supp. at 1399).

RMS's argument that the Estate's claims were compulsory counterclaims in the Foreclosure Action indicates that RMS is advocating for claim preclusion in this case.[8] Some of the Estate's claims may well be precluded, but some of the Estate's claims are based on RMS's efforts to procure the Policy proceeds after the resolution of the Foreclosure Action.  These claims clearly could not have been litigated in the Foreclosure Action.  As discussed in greater detail below, these "post-Foreclosure" claims are also the

---

[8] To the extent RMS is arguing for issue preclusion, it is clear the issues presented by the Estate's crossclaims were not "actually litigated" in the Foreclosure Action, and therefore, issue preclusion is unavailable.

only claims that have been adequately pleaded.  Thus, it is unnecessary to resolve whether the remaining, "pre-Foreclosure" claims are barred by res judicata.

### 3.  Failure to State a Claim

RMS then launches into a series of arguments addressing each of the Estate's crossclaims under Rule 12(b)(6).  ECF No. 20 at 9–17.  A number of these claims can be resolved with relative ease.  Others go to the heart of the interpleader dispute and are somewhat more complex.

### a.  Breach of Fiduciary Duty

For instance, RMS argues that the Estate's breach of fiduciary duty claim must fail because South Carolina does not recognize a fiduciary relationship between a mortgagor and mortgagee.  Id. at 9–10.  This position is supported by Brown v. C & S Real Estate Servs., Inc., where the court held that no fiduciary relationship existed between a mortgagor-plaintiff and mortgagee-defendant where the mortgagor sought damages for the mortgagee's alleged failure to procure the proper insurance on property destroyed by Hurricane Hugo.  445 S.E.2d 463, 466 (S.C. Ct. App. 1994).  The Brown court relied on the Supreme Court of South Carolina's decision in Burwell v. S.C. Nat. Bank, 340 S.E.2d 786, 790 (S.C. 1986), which held that an ordinary creditor-debtor relationship does not impose a fiduciary duty.  The Burwell court explained that, under certain circumstances, "a fiduciary relationship may be created between a bank and a customer if the bank undertakes to advise the customer as a part of the services the bank offers."  Id.

The Estate argues that because a fiduciary relationship may arise in certain, limited circumstances, its fiduciary duty claim should not be resolved until discovery is

completed. ECF No. 25 at 21. But the only South Carolina authority the Estate cites for this proposition is <u>Fernander v. Thigpen</u>, which states that, "[g]enerally, [q]uestions of agency ordinarily should not be resolved by summary judgment where there are <u>any</u> facts giving rise to an inference of an agency relationship." 293 S.E.2d 424, 425 (S.C. 1982) (second alteration in original). First, the <u>Fernander</u> case is distinguishable inasmuch as it deals with agency relationships, not fiduciary duties. To the extent these relationships are analogous, the <u>Fernander</u> case says nothing about how well the relationship must be pleaded, and unless ordinary pleading rules somehow do not apply to breach of fiduciary duty claims, the Estate's allegations are insufficient. The Estate provides no indication of how RMS undertook any fiduciary duty to the Estate. Estate's Answer ¶¶ 106–12. The closest the Estate comes to providing such information is its allegation that "[i]t was indicated that [RMS] was at first agreeable to [the Estate attempting to reinstate the subject loan] before abruptly changing course." <u>Id.</u> ¶ 108. But the Estate does not explain how such actions would have given rise to a fiduciary duty, or how that duty would have been breached by RMS's attempt to collect the Policy proceeds.

Therefore, the court finds that the Estate's breach of fiduciary duty claim fails.

### b.    SCUTPA

RMS next argues that the Estate's SCUTPA claim fails because a SCUTPA claim cannot be brought in a representative capacity and because the Estate has failed to allege any impact on the public interest. ECF No. 20 at 12–15. The court finds that the SCUTPA claim can be dismissed on the latter ground, and thus, it is unnecessary to address RMS's first argument.

The SCUPTA provides for a private right of action, when a plaintiff shows that: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry, 743 S.E.2d 808, 815 (S.C. 2013) (quoting Wright v. Craft, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)). It is well established that "[t]he act is not available to redress a private wrong where the public interest is unaffected," Bracken v. Simmons First Nat. Bank, No. 6:13-cv-1377, 2014 WL 2613175, at *6 (D.S.C. June 9, 2014) (quoting Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574, 582 (D.S.C. 2003), aff'd sub nom. 115 Fed.Appx. 636 (4th Cir. 2004)) (internal quotation marks omitted). Consequently, the act does not reach "unfair or deceptive act[s] or practice[s] that affect[ ] only the parties to a trade or a commercial transaction." Id. (quoting Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347, 349–50 (S.C. Ct. App. 1986)).

A plaintiff may show that an unfair or deceptive act or practice adversely affects the public interest by demonstrating a potential for repetition. Bahringer v. ADT Sec. Servs., Inc., 942 F. Supp. 2d 585, 594 (D.S.C. 2013). Potential for repetition is generally demonstrated in one of two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the [defendant]'s procedures create a potential for repetition of the unfair and deceptive acts." Id. (quoting Wright, 640 S.E.2d at 498). However, these are not the only methods of proving a potential for repetition, and a potential for repetition is not the only method of proving a threat to the public interest. See Daisy Outdoor Advert. Co. v.

Abbott, 473 S.E.2d 47, 51 (S.C. 1996) (explaining that "[s]ometimes, the potential for repetition or other adverse impact on the public interest will be apparent," and "declin[ing] to hold . . . that [similar past occurrences and defendant's procedures] are the only means for showing potential for repetition/public impact") (emphasis added). Ultimately, the public interest prong of the SCUPTA analysis is flexible enough that "each case must be evaluated on its own merits." Id. Still, the requirement "must be proved by specific facts." Jefferies v. Phillips, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). "Without proof of specific facts disclosing that members of the public were adversely affected by the unfair conduct or that they were likely to be so affected, the result is a 'speculative claim of adverse public impact [ ] that will not suffice under the [SCUPTA].'" Bracken, 2014 WL 2613175, at *7 (quoting Jefferies, 451 S.E.2d at 23).

The Estate has not properly alleged that RMS's actions possess a potential for repetition or otherwise affect the public interest in any cognizable way. The Estate appears to argue that RMS's actions affect the public interest because RMS is a nationwide reverse mortgage servicer and engages in broad marketing efforts to promote reverse mortgages. ECF No. 25 at 23. However, these allegations are insufficient. The scale of RMS's operations or the industry it participates in does not affect whether the alleged conduct in this case affects the public interest. If it were otherwise, any time a large company committed unfair act or practice would be subject to a SCUTPA claim. The conduct at issue in this case appears to affect a very limited set of interested parties: RMS, the Estate, and, for now, AO.

Therefore, the Estate's SCUTPA claim fails.

### c.    Aiding and Abetting

The Estate alleges that RMS aided and abetted AO's breach of contract and bad faith by pursuing the Foreclosure Action—and later, the Policy proceeds—all while it was well aware of: (1) Bolden's death, (3) the Estate's efforts to obtain the Policy proceeds, and (3) AO's bad faith. Estate's Answer ¶¶ 113–19. RMS argues that South Carolina courts have not recognized an action for aiding and abetting a breach of contract or bad faith. ECF No. 20 at 16–17.

Both parties focus their arguments on <u>Future Grp., II v. Nationsbank</u>, where the Supreme Court of South Carolina stated that "[o]ther courts have recognized a cause of action for aiding and abetting a breach of fiduciary duty where a plaintiff proves (1) a breach of a fiduciary duty owed to the plaintiff (2) the defendant's knowing participation in the breach and (3) damages." 478 S.E.2d 45, 50 (S.C. 1996). The parties debate the legal issue of whether this language allows for an aiding and abetting breach of contract claim in South Carolina. However, the court need not decide this legal question because the Estate's pleadings are factually insufficient.

Assuming that South Carolina courts would even recognize a claim for aiding and abetting breach of contract under the framework outlined in <u>Future Group</u>, the Estate has failed to plead facts showing that RMS "participated" in AO's breach of contract and bad faith. At most, the Estate has alleged that the Estate knew of, and benefited from, such actions, but this does not appear to constitute "participation" within the meaning of the <u>Future Group</u> decision. The word alone suggests some active involvement on the part of the aider and abettor. Moreover, the <u>Future Group</u> court cited the Restatement (Second) of Torts § 876 (1979) in construing the plaintiff's aiding and abetting claim. 478 S.E.2d

at 50 ("The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." (citing Restatement § 876)). Section 876 provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

There is no indication in the Estate's answer RMS and AO acted in concert, or that RMS provided any substantial assistance or encouragement to AO.

Therefore, the Estate's aiding and abetting claim fails.

### d. Improper Claim to Dwelling Loss Proceeds and Equitable Claims and Remedies

Next, RMS addresses the Estate's claims for "Improper Claim to Dwelling Loss Proceeds," and "Equitable Claims and Remedies." These claims essentially allege that any entitlement RMS may have had to the Policy proceeds was extinguished by the Foreclosure Action. Estate's Answer ¶¶ 89, 92. RMS argues that these claims must be dismissed because it was entitled to pursue to the Policy proceeds under the terms of the Policy and the Bolden's mortgage[9] with RMS (the "Mortgage").[10] ECF No. 20 at 15, 16.

---

[9] It appears there were two mortgages on the property, but the Estate's Answer properly alleges that only the Home Equity Conversion Mortgage with RMS was the only one at issue in the Foreclosure Action. Estate's Answer ¶ 68.

[10] RMS briefly offers a number of other arguments against these claims which require little consideration. RMS first states that if the Estate bases these claims on "RMS'[s] filing an answer to the interpleader action and asserting a crossclaim," they are barred by the litigation privilege. ECF No. 26 at 10. As noted above, the court finds that

For the purposes of the instant motion, it is sufficient find that, under the facts alleged in the Estate's crossclaims, the Policy and the Mortgage do not unambiguously provide RMS with a right to the Policy proceeds.  The Policy provides that any "[l]oss covered by the policy . . . shall be payable to the mortgagee, as their interest may appear, under all present or future mortgages upon the property described in the [d]eclarations of this policy in which the mortgagee may have an interest."  Policy at 39.  Thus, the Policy looks to the Mortgage to determine whether RMS is entitled to receive the Policy proceeds.  Paragraph 10 of the Mortgage provides that the "[b]orrower shall have no personal liability for payment of the debt," and that the "[l]ender may enforce the debt only through a sale of the [p]roperty.  [The] [l]ender shall not be permitted to obtain a deficiency judgment against [b]orrower if the [s]ecurity [i]nstrument is foreclosed."  ECF No. 7 Ex. 2, Mortgage ¶ 10.  The Mortgage further states that "in the event of a foreclosure . . . or other transfer of title to the [p]roperty that extinguishes the indebtedness, all right, title and interest of [b]orrower in and to insurance policies in force shall pass to the purchaser."  Id. ¶ 3.  Both of these provisions contain at least some suggestion that RMS's interests as mortgagee do not survive foreclosure.  While paragraph 10 may not address this specific—and notably unique—situation, the fact that

---

the crossclaims are based on RMS's efforts to obtain the Policy proceeds directly from AO, not RMS's participation in this interpleader action.  Thus, the litigation privilege is inapplicable.

RMS also suggests that "[t]o the extent the Estate bases its causes of action on RMS making a claim for the insurance proceeds . . . the causes of action do not survive the death of Ms. Bolden" because South Carolina's survival statute does not allow survival actions based on "malicious prosecution, fraud and deceit."  Id.  Assuming the Estate's crossclaims can be said to involve "malicious prosecution, fraud [or] deceit," the court fails to understand how the survival statute is relevant, given that the crossclaims are based on actions RMS took after Bolden's death.

RMS "may enforce the debt only through the sale of the property" and may not "obtain a deficiency judgment . . . if the security instrument is foreclosed" could be read to indicate that RMS's rights under the Mortgage terminate at the point of foreclosure. <u>Id.</u> ¶ 10. This interpretation is bolstered by the language in paragraph 3 equating foreclosure with a transfer of title that "extinguishes the indebtedness." <u>Id.</u> ¶ 3.

RMS highlights a separate portion of paragraph 3, which states that "[e]ach insurance company concerned is hereby authorized and directed to make payment for [a] loss to lender instead of to borrower and lender jointly." <u>Id.</u> When read in isolation, this language certainly indicates that RMS is entitled to insurance proceeds. However, it is not at all clear that this language was intended to apply to funds disbursed <u>after</u> foreclosure, especially if foreclosure "extinguishes the indebtedness." <u>Id.</u> Moreover, if paragraph 3 were interpreted to allow the lender to direct Policy payments to itself, even after a foreclosure, it would seem to contradict the language in paragraph 10 stating that the "lender may enforce the debt only through a sale of the property." <u>Id.</u> ¶ 10. Thus, the court finds that it is at least ambiguous whether the Mortgage provides RMS with the authority it claims.

The parties spend a great deal of energy analyzing <u>Jones</u>, 556 S.E.2d 713, and other South Carolina cases in an effort to determine whether mortgagees are allowed to recover from insurance proceeds after a foreclosure and waiver of deficiency. The <u>Jones</u> case addressed the issue of whether a mortgagee's waiver of deficiency judgment prevented it from recovering insurance proceeds after a foreclosure sale. The court found it did not, employing a somewhat questionable definition of "deficiency judgment." <u>Compare</u> <u>Jones</u>, 556 S.E.2d at 718 ("By waiving deficiency, a mortgagee relinquishes

only the right to pursue assets of the mortgagor over and above those covered by the mortgage.") with S.C. Code § 29-3-660 (defining deficiency judgment as "any residue of the mortgage debt that may remain unsatisfied after a sale of the mortgaged premises"). However, the Jones court did not question the proposition that "a mortgagee's rights under an insurance policy are terminated if, after a fire loss, the underlying debt is satisfied by a purchaser at a foreclosure sale."[11] Jones, 556 S.E.2d at 717. It simply moved forward on a theory that the debt was not satisfied by the foreclosure sale. Id. at 718. Because the terms of the RMS mortgage at least suggest the debt in this case was satisfied by the foreclosure sale, the court finds it unnecessary to determine whether Jones controls.

Therefore, the Estate has sufficiently pleaded causes of action for Improper Claim to Dwelling Loss Proceeds," and "Equitable Claims and Remedies."

### e. Breach of Contract

The Estate's breach of contract claim simply alleges that "[t]he actions or inactions on the part of Reverse Mortgage Solutions, Inc., asserted herein, also amount to a breach of contract by Reverse Mortgage Solutions." Estate's Answer ¶ 104. The

---

[11] RMS attempts to distinguish Singletary v. Aetna Cas. & Sur. Co., 447 S.E.2d 869, 869 (S.C. Ct. App. 1994), the case cited by the Jones court for this proposition, by arguing that the mortgagee in that case only obtained their interest in the mortgage after the foreclosure sale. ECF No. 26 at 3–4. In this case, RMS notes, it was the mortgagee, servicer, and owner of the note well before the fire and foreclosure sale. Id. This appears to the court to be a distinction without a difference. The timing of when the mortgagee acquired its interest in Singletary, and any other interests it may have had, is plainly irrelevant to its holding. See Singletary, 447 S.E.2d at 870 (noting that "[a] majority of those jurisdictions which have addressed this issue have held 'that if subsequent to the fire the mortgagee has had its debt satisfied by purchase at foreclosure either by the mortgagee or a stranger, even by its bidding in of the outstanding debt, the mortgagee's rights under the policy are terminated.'" (emphasis added) (quoting Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co., 270 N.E.2d 694, 696 (N.Y. 1971))).

actions or inactions the Estate specifically identifies, include but are not limited to, RMS's "attempt to collect twice, demand for payment, interference with contractual relations, not acting in good faith and contrary to law, waiver, estoppel, laches, unjust enrichment, and/or unclean hands, and unfair trade practices, and breach of contract."[12] Id. ¶ 105. Thus, the Estate's breach of contract claim leaves a great deal to the imagination. Most significantly, it is not clear what contract or obligation RMS breached.

Presumably, the Estate intends to allege a breach of either the Policy or the mortgage arising from RMS's attempt to claim the Policy proceeds. RMS addresses this allegation by arguing that it was empowered to pursue the Policy proceeds by both documents. ECF No. 20 at 11, 12. To the extent the Estate's breach of contract claim is duplicative of the "improper claim to dwelling loss proceeds" and "equitable claims" discussed in the preceding section, the court finds that it has been adequately pleaded for the reasons discussed above. However, to the extent the breach of contract claim rests on some other theory, the claim fails.

---

[12] Notably, this language appears as part of the Estate's allegation of damages, which is repeated almost verbatim in every other crossclaim contained in the Estate's answer.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part AO's motion for interpleader, **GRANTS** in part and **DENIES** in part AO's motion to dismiss, and **GRANTS** in part and **DENIES** in part RMS's motion to dismiss.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 7, 2017**
**Charleston, South Carolina**